**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DENZEL KYRESE GATES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-0017** |
| | : | |
| **THE COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** *et al.,* | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**HODGE, J.**                                                              **MARCH 13, 2026**

Denzel Kyrese Gates filed this *pro se* civil rights action asserting claims arising from

dependency proceedings in Philadelphia Family Court and his minor daughter's placement in

foster care.  Gates seeks leave to proceed *in forma pauperis*.  For the following reasons, the

Court will grant Gates leave to proceed *in forma pauperis* and dismiss his Complaint.

## I.      FACTUAL ALLEGATIONS[1]

On August 20, 2025, after receiving multiple reports of suspected child abuse or neglect,

the City of Philadelphia Department of Human Services ("DHS") took temporary custody of the

three minor children of Toneshia Gary, including Gates's 6-month-old daughter.  (ECF No. 4 at

4-6.)  On August 26, 2025, the Philadelphia Family Court, Juvenile Branch, conducted a hearing

to determine whether to adjudicate Gates's daughter as a dependent and what arrangements to

make for her custody going forward.  (*Id*. at 3.)  Gates's exhibits appear to indicate that he was

served with notice of the hearing at a residential address in Philadelphia, (*see id*. at 10), however

Gates states that he did not receive any notice prior to the hearing, possibly due to his

---

[1] The factual allegations are taken from Gates's Complaint (ECF No. 2) and two exhibits
he filed separately (ECF Nos. 4, 5), which contain documents related to his daughter's
dependency case in Philadelphia Family Court.  The Court considers the entirety of the
submission to constitute the Complaint and adopts the sequential pagination assigned by the
CM/ECF docketing system.  Where appropriate, grammar, spelling, and punctuation errors in
Gates's pleading will be corrected for clarity.

incarceration at the time, (Compl. at 4.)  He alleges that as a result of the August 26, 2025 proceedings, DHS placed his daughter in foster care.  (*Id*.)  He contends he should have been given a chance to place her with family members instead and that by the time he learned of the proceedings it was "too late."  (*Id*.)  Gates also alleges that DHS staff made unspecified "false accusations" about him in the report they filed for the case.  (*Id*. at 4-5.)  He alleges that his daughter remains in foster care.  (*Id*. at 4.)

As a result of these events, Gates asserts he suffered emotional distress including panic attacks.  (*Id*. at 6.)  He names as Defendants (1) the Commonwealth of Pennsylvania; (2) "Boss Josh Shapiro"; (3) "the Government Itself"; (4) DHS; (5) Community Umbrella Agencies ("CUA"); (6) Philadelphia Family Court; and (7) Law Office of Meredith Marie Rogers.  (*Id*. at 2-3.)  He alleges that his constitutional rights to due process, free speech, and to be innocent until proven guilty were violated.  (*Id*. at 3.)  Gates seeks monetary damages and various forms of injunctive relief.[2]  (*Id*. at 6-7)

## II.    STANDARD OF REVIEW

The Court grants Gates leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether

---

[2] Gates requests that: (1) the head of DHS resign and he be assigned to replace her; (2) he and "other people be paid for the punitive damages they have caused from family members being separated illegally due to the fraudulent activities happening within their governments inside the Commonwealth of Pennsylvania jurisdiction"; (3) for the Commonwealth to withdraw "every past case that they have violated concerning due process being violated, innocent until proven guilty and freedom of speech and constitutional rights period"; (4) "it . . . be exposed more, that the/our constitutional rights superseded lower level jurisdiction in this earth"; (5) "they resign: those who are abusing the rules and regulations; and that is jumping their seats by superseding their jurisdictions in this earth"; (6) $1 million "be sent to the mothers and fathers that have lost their kids to suicide due to the fact that they were isolated from their families and they had their rights taken away illegally . . ."; (7) $1 million "sent to [Gates's] account for every family member [he] lost to the DHS system and also custody battles . . ."  (Compl. at 6-7.)

a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Gates is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  The court must also dismiss claims that seek relief from immune defendants.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." (citation omitted)).

### A.    Claims Against Private Entities

Gates names as Defendants two private entities that were involved in his daughter's dependency proceedings and foster care placement.  For reasons discussed below, the claims against them are not plausible and will be dismissed.

### 1.    Law Office of Meredith Marie Rogers

Gates sues attorney Meredith Marie Rogers, who served as substitute counsel for Gates at the September 16, 2025 dependency hearing.[3]  (ECF No. 4 at 1.)  Rogers is not otherwise discussed in the Complaint, nor is she mentioned further in the attached exhibits.  Gates's claims against Rogers thus appear to stem solely from her role as his court-appointed counsel in the dependency proceedings.  However, "[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (citations omitted); *see also Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983).  Because she was performing a lawyer's traditional functions when she represented Gates in the dependency proceedings, Rogers was not a state actor under § 1983 and will therefore be dismissed from this action with prejudice.

---

[3] It is unclear from the Complaint and attached exhibits whether Rogers continued to represent Gates at subsequent hearings.

2.      **CUA**

Gates also sues CUA, an unspecified foster care agency that assisted DHS in locating a placement for his daughter.[4]  (*See* ECF No. 4 at 1.)  Whether a private entity is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations and citation omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations, alteration, and citation omitted).  "Action taken by private entities with the mere approval or acquiescence of the State is not state action."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citations omitted).  Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'"  *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  The United States Court of Appeals for the Third Circuit has suggested that foster placement is not a public function.  *Leshko*, 423 F.3d at 346 (noting in *dicta* that "in

---

[4] Based on information published on the City of Philadelphia website, there is no single entity known as "Community Umbrella Agencies"; rather, the term refers to a group of six different foster care placement agencies that work with DHS across 10 regions within the City. *See* https://www.phila.gov/departments/department-of-human-services/about-us/key-partnerships/ (last visited March 9, 2026).  From Gates's exhibits, it appears that the CUA involved in Gates's case was NorthEast Treatment Centers, the agency covering region #7.  (*See* ECF No. 4 at 3.)

Pennsylvania, locating suitable foster homes and placing children in them traditionally was a function of private charitable organizations"); *see also M.B. v. Schuylkill Cnty.*, 375 F. Supp. 3d 574, 599 (E.D. Pa. 2019) (citing *Leshko* and holding that private foster care agencies are not state actors under the public function test).

Other than referring to Gates's daughter as "being placed in [the] CUA DHS foster care system," (*id.*), the Complaint does not discuss the CUA's involvement in his dependency case, including any facts suggesting that its actions could be "fairly treated as those of the State." *Leshko*, 423 F.3d at 339. Without more, Gates does not allege that the CUA is a state actor subject to suit under § 1983. Moreover, his sparse allegations do not allege the entity's involvement in any underlying violation of his rights.[5] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). However, the Court will grant Gates leave to amend if he can plausibly allege that the CUA functioned as a state actor and was personally involved in the violation of his rights.

---

[5] To hold a private entity like a foster care agency liable for a constitutional violation under § 1983, Gates must allege that the entity had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)) (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty. Okl. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017). The Complaint does not allege that the CUA had a policy or custom that caused his constitutional injuries.

### B.    Claims Against Governor Shapiro, the Commonwealth, and its Entities

Gates asserts constitutional claims against Governor Josh Shapiro, the Commonwealth of Pennsylvania, and the Philadelphia Family Court.[6]  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Additionally, the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity.  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).  Thus, the Court deems Gates's claims against Governor Josh Shapiro, who is not alleged to have been directly involved in the violation of his rights, as official capacity claims.

As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court seeking monetary damages.  Thus, Gates's claims seeking monetary damages against Shapiro and the Commonwealth are dismissed without prejudice.  *See Pennhurst State Sch. And Hosp.*, 465 U.S.

---

[6] The Family Division of the Philadelphia Court of Common Pleas is part of the First Judicial District within the Commonwealth of Pennsylvania's Unified Judicial System.  *See Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 235 n.1 (3d Cir. 2005) (explaining that the First Judicial District is one of 60 districts in the Commonwealth's Unified Judicial System and is composed of three courts including the Court of Common Pleas, of which the Family Division is a part).

at 99-100; *see also Kelly v. Wolf*, No. 19-1750, 2019 WL 4735521, at *2 (E.D. Pa. Sept. 26, 2019) (dismissing official capacity claims seeking monetary damages against governor as barred by Eleventh Amendment); *see also Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (noting that dismissals based on Eleventh Amendment immunity "should normally be without prejudice."). Further, Gates's claims against the Philadelphia Family Court, part of Pennsylvania's unified judicial system, are barred by Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).

State officials may, however, be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See Ex parte Young,* 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp.,* 465 U.S. at 102)*.* "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted). Thus, under the *Ex parte Young* doctrine, a plaintiff may bring claims against state officials in their official capacity when they commit an "ongoing violation of federal law." *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020); *see also Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) ("[A] state employee may be sued in his official capacity only for prospective injunctive relief, because official-capacity actions for prospective relief are not treated as actions against the State." (internal quotations omitted)).

8

But the "legal fiction recognized in *Ex parte Young* is narrow in scope." *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193 (3d Cir. Jan. 12, 2021). "It requires [the Court] to conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and whether it seeks relief properly characterized as prospective." *Id.* at 193-94 (internal quotations omitted). A plaintiff bringing such a claim "must show that they have sustained or are in immediate danger of sustaining some direct injury as the result of the challenged official conduct" that is real and immediate, as opposed to hypothetical or conjectural. *J. C. v. Ford*, 674 F. App'x 230, 232 (3d Cir. 2016) (*per curiam*) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Also, the *Ex Parte Young* exception does not apply when the state is the real party in interest, *i.e.*, if a judgment would "expend itself on the public treasury or domain, or interfere with public administration" or if plaintiff seeks "specific performance of a State's contract." *Waterfront Comm'n*, 961 F.3d at 238-39 (internal quotations omitted). "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157; *Pepper v. Att'y Gen. Pa.*, No. 24-1261, 2024 WL 5102861, at *1 n.1 (3d Cir. Dec. 13, 2024) ("To qualify for [the *Ex parte Young*] exception, however, the official must have some connection with the enforcement of the allegedly unconstitutional act." (quotations omitted)).

A straightforward inquiry into Gates's claims indicates that he does not seek relief from an ongoing violation of federal law. Rather, he seeks various forms of relief that the Court has

9

no authority to grant, and which are unrelated to any real or immediate threat to his rights.[7]  *See*

*J. C.*, 674 F. App'x at 232-33; *see also Newton v. Fam. Court of Phila.*, No. 25-915, 2025 WL

992689, at *2 (E.D. Pa. April 2, 2025) (dismissing with prejudice litigant's claims for injunctive

relief seeking to "put the Court houses in Pennsylvania, New Jersey, and Puerto Rico in

foreclosure" and "abolish the Family Court house Domestic Relationship Division" because such

relief is unavailable in a § 1983 action).  Nor does Gates name any Commonwealth official

responsible for the enforcement of an allegedly unconstitutional act.  *See Pepper*, 2024 WL

5102861 at *1 n.1.  Accordingly, because (1) Gates's claims against the Commonwealth, its

entities, and Governor Shapiro may not proceed, and (2) he has failed to present a claim for

injunctive relief that could satisfy the exception of *Ex parte Young*, his claims against the

Commonwealth will be dismissed. [8]

### C.      Claims Against DHS

Gates asserts § 1983 claims against DHS, an agency of the City of Philadelphia.

However, City agencies are not suable entities under § 1983 because they do not have a separate

legal existence.  *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1

---

[7] The Court has no authority, for example, to remove the Director of DHS and put Gates in charge.  His other requests are difficult to understand.  These include his request that the Commonwealth withdraw "every past case that they have violated concerning due process being violated, innocent until proven guilty and freedom of speech and constitutional rights period" and his vague request that "those who are abusing the rules and regulations; and that is jumping their seats by superseding their jurisdictions in this earth" be forced to resign.  (Compl. at 6-7.)

[8] While the dismissal of the claims against the Commonwealth, its officials and entities will be without prejudice, the Court will not grant leave to amend as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that dismissal under the Prison Litigation Reform Act should be with leave to amend "unless amendment would be inequitable or futile."); *see also Batista v. Williams,* No. 23-2028, 2025 WL 648651, at *7 (M.D. Pa. Feb. 3, 2025) (finding that amendment of claims against the Commonwealth of Pennsylvania would be futile "because the Commonwealth is immune to this suit in federal court"), *report and recommendation adopted*, 2025 WL 642097 (M.D. Pa. Feb. 27, 2025).

(E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Smith-Goodman v. City of Phila. Dep't of Hum. Servs.*, No. 18-3675, 2018 WL 4186390, at *2 (E.D. Pa. Aug. 31, 2018) (dismissing § 1983 claims against DHS "because that entity is a department of the City and thus is not a separate legal entity independently subject to suit.") (citation and quotation marks omitted); *see also Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000) ("Neither DHS or YSC has an independent corporate existence from the City of Philadelphia; therefore, all claims against them must be brought in the name of the City."). In any event, to state a § 1983 claim against a municipality, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). However, Gates has not identified a municipal policy or custom that led to the alleged violation of his constitutional rights. *See B.S. v. Somerset Cnty.*, 704 F.3d 250, 274 (3d Cir. 2013) ("With respect to municipalities such as the County, [the] inquiry turns on whether the due process violation was a result of the County's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"). Accordingly, Gates's §1983 claims against the Philadelphia DHS are not plausible and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### D.    Due Process Claims

Gates asserts that his due process rights were violated when the Philadelphia Family Court conducted dependency proceedings on August 26, 2025 without notifying him and without his involvement, and then placed his daughter in the foster care system. (Compl. at 4-5.) The Court understands Gates to assert both procedural and substantive due process claims. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or

11

property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of his procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

"[P]arents have a constitutionally cognizable liberty interest in the care, custody, and management of their children." *Dennis v. DeJong*, 867 F. Supp. 2d 588, 623 (E.D. Pa. 2011). But while "parents have a fundamental liberty interest in the custody of their children they do not always have a right to prior process when the state removes their children from their custody . . . in emergency circumstances which pose an immediate threat to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or a court order." *Patterson v. Armstrong Cnty. Child. & Youth Servs.*, 141 F. Supp. 2d 512, 530-31 (W.D. Pa. 2001) (citations and quotation marks omitted).

Substantive due process rights are those rights which are "fundamental" under the Constitution. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–141 (3d Cir. 2000). These include the "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)); *see also Anspach v. City of Philadelphia*, 503 F.3d 256, 261 (3d Cir. 2007). To support a substantive due process claim in the context of dependency proceedings, a child welfare worker's decision-making must be so clearly arbitrary that it shocks the conscience. *Miller*, 174 F.3d at 376.

12

Gates asserts that his due process rights were violated when government officials failed to alert him of the pending dependency proceedings and then placed his daughter in foster care. (Compl. at 4.)  He alleges that government officials intentionally excluded him from the proceedings because he "was a threat/witness against them." (*Id*.)  However, Gates's allegations are contradicted by the exhibits he attached, which reflect that DHS made efforts to serve him with notice of their emergency custody actions and the August 26, 2025 hearing.  (ECF No. 4 at 10.)  Further, Gates alleges he was incarcerated at the time of the hearing, suggesting that DHS did not intentionally exclude him from the dependency proceedings but was simply unable to locate him.  (Compl. at 4.)

Nor does Gates allege he was denied an opportunity to participate in the subsequent dependency proceedings.  Indeed, court documents reflect that the state court postponed a September 16, 2025 hearing because Gates was unable to be served.  (ECF No. 4 at 1.)  He was subpoenaed for the rescheduled hearing on December 10, 2025, which he appears to have attended.  (*Id*. at 13-15.)  Even if his participation in the dependency proceedings was delayed, Gates had an opportunity to be heard as to his daughter's placement in foster care and as to other custody and visitation arrangements.  His procedural due process claim is therefore not plausible. *See Mathews*, 424 U.S. at 333; *see also Lowe v. Lancaster Cnty. Child. and Youth Soc. Servs.*, 2020 WL 7223416, at *7 (E.D. Pa. Dec. 8, 2020) (holding that even if father did not receive notice of an emergency custody hearing, "the court held a prompt second hearing . . . about which [he] was notified.  Accordingly, had there been a due process violation, this hearing would have cured any violation.").  Because Gates relies on the same allegations for his substantive due process claim, that claim also fails, since he has not alleged conscience shocking conduct. However, the Court will afford Gates an opportunity to file an amended complaint in the event

he can allege additional facts sufficient to state a plausible claim under the standards set forth above.[9]

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Gates leave to proceed *in forma pauperis* and dismiss the Complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915.  The Court will grant Gates an opportunity to file an amended complaint if he can allege additional facts to cure the defects noted above so as to state a plausible due process claim against an appropriate defendant.  An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**
**KELLEY BRISBON HODGE, J.**

---

[9] Gates also references in passing his rights to equal protection, freedom of speech, and to be presumed innocent until proven guilty.  (Compl. at 3, 5.)  These claims are entirely undeveloped in the Complaint and therefore not plausible, because a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at \*7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int' l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at \*2 n.1 (D.N.J. Oct. 18, 2018).

To the extent Gates asserts a claim alleging his right to be presumed innocent until proven guilty was violated, this is a principle that applies in the context of a criminal prosecution, not a civil proceeding such as a dependency hearing in which Gates is not the "accused." *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."); *see, e.g.*, *Andre v. Walgreen Co.*, No. 12-5413, 2013 WL 3223373, at \*6 (D.N.J. June 25, 2013) ("Surely, an individual is entitled to the presumption of innocence with respect to criminal proceedings; however, employers are not required to honor this presumption when making business decisions including deciding whether to maintain or terminate an at-will employment relationship."), *appeal denied, judgment aff'd*, 2014 WL 1390890 (D.N.J. Mar. 24, 2014); *see also* Hon. J. Harvie Wilkinson III, *The Presumption of Civil Innocence*, 104 Va. L. Rev. 589, 611–12 (2018) ("The presumption of criminal innocence is well known . . . But there is no comparable recognition of a presumption of *civil* innocence.").

14
